CUSTODIO & DUBEY LLP
MIGUEL CUSTODIO, JR. (SBN 248744)
VINEET DUBEY (SBN 243208)
445 S. Figueroa Street, Suite 2520
Los Angeles, CA  90071
Phone:  (213) 593-9095
Fax:     (213) 785-2899
Email:  custodio@cd-lawyers.com
Email: dubey@cd-lawyers.com

GEORGE FELDMAN MCDONALD, PLLC
JANINE L. POLLACK (Pro hac vice forthcoming)
745 Fifth Avenue, Suite 500
New York, New York 10151
Phone: (917) 899-1765
Fax:     (332) 206-2073
Email: jpollack@4-justice.com
Email: eservice@4-justice.com

ACCESS LAWYERS GROUP
C. MARIO JARAMILLO (SBN 195343)
1055 Colorado Boulevard, Suite 500
Pasadena, CA  91106
Phone:  (866) 643-9099
Fax:     (866) 686-5590
Email:  cmjesq@access.law

Counsel for Plaintiffs and the Class
Additional Counsel listed on signature page

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLAKE PORTER and THERESA DAVIS, Individually and on Behalf of All Others Similarly Situated, | Case No. _____ |
| Plaintiffs, | **CLASS ACTION COMPLAINT FOR:** |
| v. | (1) VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; |
| EQUITY RESIDENTIAL, ERP OPERATING LIMITED PARTNERSHIP, and EQUITY RESIDENTIAL MANAGEMENT, LLC, | (2) VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW; (3) BREACH OF CONTRACT/IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; (4) UNJUST ENRICHMENT. |
| Defendants. | **DEMAND FOR JURY TRIAL** |

1.     Plaintiffs Blake Porter and Theresa Davis ("Plaintiffs"), by and through their undersigned counsel, on their own behalf and on behalf of all others similarly situated as to the Class defined below, bring this Class Action Complaint against Defendants Equity Residential ("EQR"), ERP Operating Limited Partnership ("ERPOP"), and Equity Residential Management, LLC ("ERM") (collectively, "Defendants") and allege the following facts in support of their claims against Defendants based upon public information, personal knowledge, where applicable, information and belief, and the investigation of counsel:

I.    **NATURE OF THE ACTION**

2.     EQR's website states that it "owns or has investments in 312 properties consisting of 84,018 apartment units, with an established presence in Boston, New York, Washington, D.C., Seattle, San Francisco and Southern California, and an expanding presence in Denver, Atlanta, Dallas/Ft. Worth and Austin."[1]  According to Defendants' most recent Form 10-K for the fiscal year ended December 31, 2024, signed Feb. 13, 2025 (the "2024 10-K"), "The Company is one of the largest U.S. publicly-traded owners and operators of high quality rental apartment properties[.]"[2]  The 2024 10-K further states that, as of December 31, 2024, Defendants owned all or a portion of 311 properties located in 10 states and the District of Columbia consisting of 84,249 apartment units, of which 121 properties consisting of 32,415 units are located in California (listed by area as: Los Angeles; Orange County; San Diego; and San Francisco).[3]  However, Defendants improperly charge tenants residing in the vast majority of their properties in California, including

---

[1] https://investors.equityapartments.com/overview/corporate-profile/default.aspx (last visited Mar. 25, 2025).

[2] https://www.sec.gov/Archives/edgar/data/906107/000095017025019894/eqr-20241231.htm, at 7 (last visited Mar. 25, 2025).

[3] *Id.* at 25-26.

(previously) Plaintiffs herein and the Class, separate fees for pest control and/or trash/trash administration (trash and trash administration are collectively referred to as "trash" unless otherwise indicated)[4] when those types of fees by law in California must be paid by landlords such as Defendants and cannot be charged separately from the rent.  (The properties located in California at issue in this Complaint at which Defendants charge separate fees for pest control and/or trash not included in the rent are hereinafter referred to as the "California Properties.")  The Class, as defined herein below, includes only those persons at the California Properties who paid separate fees or costs for pest control and/or trash services not included in the rent.

3.      Renters such as Plaintiffs and the Class depend on landlords and their affiliates, such as Defendants, to be truthful about what fees can be properly charged in a lease in California and do not expect that they will be charged improper fees that are not allowed under California law, such as separate fees for pest control and trash services outside of the rent.

4.      Many residential property companies and their affiliates do not charge their tenants separate fees for pest control or trash services knowing that, under California law, such costs must be absorbed by the landlord and included in the rent.  These extra fees cause consumers, such as Plaintiffs and the Class, to be unable to meaningfully compare expenses between apartments when deciding where to live, which also hurts fair competition.

5.      Defendants, by shifting to tenants the costs of pest control and trash services, avoid covering the costs for these services, thereby increasing their profits every month from every rental unit.  But this is not permitted under California law.

---

[4] As per Defendants' website, they also charge at certain of their California properties (a total of 11 properties in these areas: eight in San Francisco; two in Los Angeles; and one in Orange County) a "Recurring Trash Valet Service" fee of between $25 and $35 in addition to the trash fees.  For example, at the Vantage Hollywood Apartments in Los Angeles, there is a trash fee of $37 per month and a Recurring Trash Valet Service fee of $30.  *See* https://www.equityapartments.com/UnitFees/24012/1/448 (last visited Mar. 25, 2025).

CLASS ACTION COMPLAINT

6.     Plaintiffs bring this proposed class action individually and on behalf of all other members of the Class (as defined herein), asserting claims for violations of California's Consumers Legal Remedies Act (California Civil Code §§1750 *et seq.*); violations of the California Unfair Competition Law (California Business & Professions Code §§17200 *et seq.*); breach of contract/implied covenant of good faith and fair dealing; and unjust enrichment, seeking monetary damages, equitable, declaratory and injunctive relief, and all other relief as authorized in equity or by law.

## II.   <u>JURISDICTION AND VENUE</u>

7.     This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d)(2), because Plaintiffs herein are of diverse citizenship from Defendants, at least one Class member is of diverse state citizenship from Defendants, there are more than 100 Class members in the proposed Class, and the aggregated amount in controversy exceeds $5 million, exclusive of interest and costs.

8.     The Central District of California has personal jurisdiction over Defendants as the apartment owned and operated by Defendants in which Plaintiffs resided is located in this District and Defendants conduct substantial business in this State and in this District through their ownership and/or operation of numerous such apartment buildings.

9.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) because the apartment in which Plaintiffs resided was located in this District and because a substantial part of the events giving rise to the conduct alleged in this Complaint occurred in, were directed to, and emanated from this District.

### III.    <u>PARTIES</u>

*Plaintiffs*

10.    Plaintiffs Blake Porter and Theresa Davis are citizens and residents of the State of California, currently residing together in Santa Clarita, California. They do not currently reside in an apartment owned, managed or operated by Defendants. From approximately May 8, 2021 through August 12, 2024, Plaintiffs were signatories to a Residential Lease (the "Lease") for an apartment owned, managed and/or operated by Defendants pursuant to which they lived in the Portofino Apartment Complex located at 24446 Valencia Blvd, Apt. 7216, Valencia, CA 91355. (Plaintiffs' Lease for the period May 8, 2021 to May 9, 2022 is attached as Ex. A hereto). Upon information and belief, the terms of Plaintiffs' Lease were substantially the same if not identical during the entirety of their tenancy at the Portofino Apartment Complex. The essential terms of that Lease were that Plaintiffs would pay rent to live in their unit and the landlord (Defendants and/or their affiliates) was required to comply with whatever obligations are imposed by law as to that Lease. During the term of the Lease and applicable statute of limitations periods, Plaintiffs paid every month to Defendants separate fees, not included in the rent, for pest control and trash services, as stated in Plaintiffs' Lease. The Lease Term Sheet (the "Term Sheet") stated that residents will pay for "Pest" and "Garbage Removal" and both will be "Allocated equally among all occupied apartments. You will receive a bill from our billing vendor." The Lease did not state the amount of the extra fees for pest control or trash.

11.    Upon timely notice to Defendants that they were terminating the Lease, Plaintiffs thereafter received a document from "Conservice, The Utility Experts," a utility management and billing services company, entitled "Final Bill Estimates" for "Current Cycle Dates" of June 1, 2024 to August 16, 2024, which included fees for "Pest Control" of $4.97; "Trash" of $132.51; and "Trash Admin Fee" of $4.67. As per a Statement of Deposit, which indicated a vacate date of

CLASS ACTION COMPLAINT

August 16, 2024, the "Charges Assessed During the Move Out Process" included, on August 18, 2024: "Trash" for $77.66; "Admin Fee" for $4.67; and "Pest" for $3.13.

12.     At no time during the term of Plaintiffs' Lease or otherwise did Defendants or their affiliates ever advise Plaintiffs that they had failed to perform any of their obligations under the Lease, including but not limited to the payment of rent or any other fees or costs.  At no time during the term of Plaintiffs' Lease or otherwise did Defendants or their affiliates ever give Plaintiffs a "notice to correct or cure" any alleged default nor did Defendants or their affiliates take any "action to recover possession of" Plaintiffs' apartment "via the eviction process or otherwise, and/or terminating the Lease," nor did Defendants or their affiliates attempt to "recover the costs of taking possession of and re-renting" Plaintiffs' apartment "or any other fees and charges [Defendants or their affiliates] incur[red] in enforcing this Lease and collecting outstanding amounts" under the Lease, as permitted in Paragraph 27 ("Default Remedies") of the Terms and Conditions of the Lease ("Terms and Conditions").  Thus, because neither Defendants nor their affiliates took any action under Paragraph 27 of the Terms and Conditions of the Lease, Paragraph 27 has no applicability in this matter.

13.     At no time during the term of Plaintiffs' Lease or otherwise did Defendants or their affiliates ever advise Plaintiffs that they had failed to maintain their apartment in a clean and sanitary condition "free of garbage and rubbish and in a condition that does not cause or contribute to a pest or rodent infestation" as permitted in Paragraph 22 ("Repair and Maintenance") of the Terms and Conditions.

***Defendants***

14.     Defendant EQR, a member of the S&P 500, is a Maryland real estate investment trust ("REIT") with its principal place of business located at Two North Riverside Plaza, Suite 400, Chicago IL 60606.  According to the 2024 10-K (at 3), "EQR is the general partner of, and

as of December 31, 2024 owned an approximate 97% ownership interest in, [Defendant] ERPOP. The remaining 3.0% interest is owned by limited partners." As further stated in the 2024 10-K (at 3), "As the sole general partner of ERPOP, EQR has exclusive control of ERPOP's day-to-day management." The 2024 10-K also states (at 3) that "[m]anagement operates" EQR and ERPOP, and all of their subsidiaries and entities owned or controlled by them, "as one business" and "[t]he management of EQR consists of the same members as the management of ERPOP." As further stated in the 2024 10-K (at 4), all

> property ownership, development and related business operations are conducted through [Defendant ERPOP] and EQR has no material assets or liabilities other than its investment in ERPOP. EQR's primary function is acting as the general partner of ERPOP. EQR also issues equity from time to time, the net proceeds of which it is obligated to contribute to ERPOP. EQR does not have any indebtedness as all debt is incurred by [ERPOP].

Through ERPOP and ERPOP's subsidiaries, EQR owns or controls all the California Properties where Class members rented or are renting apartments and paid or are paying improper and illegal pest control and trash fees, including Plaintiffs' rental apartment property. On information and belief, EQR owns and/or controls all the entities that set the pest control and trash fees at issue at Defendants' California Properties.

15. Defendant ERPOP is an Illinois limited partnership that is the "Operating Partnership" for EQR.[5] It is registered with the California Secretary of State to do business in California. Its principal place of business is located at Two North Riverside Plaza, Suite 400, Chicago IL 60606. As stated in the 2024 10-K (at 4), "[a]lthough the Operating Partnership is generally the entity that directly or indirectly enters into contracts and joint ventures and holds assets and debt," EQR and ERPOP, and all of their subsidiaries and entities owned or controlled

---

[5]    https://www.sec.gov/Archives/edgar/data/906107/000095017025019894/eqr-20241231.htm (last accessed Mar. 25, 2025).

by them, operate as "one business" through ERPOP. EQR/ERPOP own and operate single-purpose limited liability companies that acquire residential rental properties throughout California.[6] Through those limited liability companies, EQR/ERPOP own and/or control thousands of residential units throughout California, including Plaintiffs' and Class members' rental units.[7]

16. Plaintiffs are further informed and believe and thereon allege that Defendants EQR and ERPOP, either directly or through their subsidiaries and entities owned or controlled by them, engaged in activities of a lessor and/or landlord at the California Properties, including but not limited to: being entitled to receive and receiving rents for the California Properties; management of the California Properties; operation of the California Properties; leasing of the California Properties; maintenance of the California Properties; maintaining books, records and accounts for the California Properties; obtaining and keeping tenants at the California Properties; negotiation, renewal, extension, modification and cancellation of leases for the California Properties; performance, or lack thereof, of leases for the California Properties; enforcement of leases for the California Properties; collection for and keeping of rents at the California Properties; pursuing legal action against tenants for allegedly failing to pay rents due for the California Properties; inspecting the California Properties; distributing notices for the California Properties; and/or promulgation of rules for the California Properties.

17. Defendant ERM is a Delaware limited liability company with its principal place of

---

[6] *See* https://www.sec.gov/Archives/edgar/data/906107/000095017025019894/eqr-20241231.htm, at 52 (Exhibit 21, *List of Subsidiaries of Equity Residential and ERP Operating Limited Partnership*, https://www.sec.gov/Archives/edgar/data/906107/000095017025019894/eqr-ex21.htm) (last accessed Mar. 25, 2025).

[7] *See id.*

business located at Two North Riverside Plaza, Suite 400, Chicago IL 60606.  It is registered with the State of California to do business in this state.  It is a subsidiary of Defendant EQR and/or Defendant ERPOP.[8]  Defendant ERPOP is the sole member of ERM.  ERM is a regional property management office with a branch location at 24452 Valencia Blvd., Valencia CA 91355.  The Term Sheet for Plaintiffs' Lease states that the "Lessor" is ERM "as agent for the Owner."  The Terms and Conditions of the Lease state (at page 1 of 7), "The party executing this Lease as the Lessor is Equity Residential Management, L.L.C., which is acting as the managing agent for the owner of the Community."  Upon information and belief, the California Properties are owned and/or managed by various EQR/ERPOP entities named as Defendants herein.

18.     Given that, as represented in the 2024 10-K, Defendants EQR, ERPOP, and all of their subsidiaries and entities owned or controlled by them (which includes Defendant ERM) operate as "one business," they may be treated as a group in this Complaint and are all jointly and severally liable for each other's actions and violations of law as stated herein.  Each of the Defendants have or had roles in owning and/or managing the California Properties at which Plaintiffs and members of the Class resided, and/or in implementing or receiving the pest control and trash fees that Plaintiffs challenge herein.

19.     Defendants' focus is on "affluent knowledge workers."  As stated in the 2024 10-K (at 7), "We believe our markets are knowledge centers of the U.S. economy that draw employers and their talented affluent workers that drive economic growth in the United States. We believe that both the locations of our properties and the cost of renting versus home ownership in these markets are attractive to these affluent knowledge workers (who often choose to rent for lifestyle reasons and due to a lack of home affordability) that we hope to convert into satisfied long-term

---

[8] *See id.*

CLASS ACTION COMPLAINT

residents."

**Relevant Findings of Fact and Conclusions of Law After Bench Trial in Other Litigation Against Defendants**

20.     In a recent class action that included each of the same entities named as defendants herein, *see Munguia-Brown v. Equity Residential*, 16-cv-01225-JSW (N.D. Cal. Apr. 8, 2024) (Dkt. 546), challenging certain late fees in Defendants' California residential leases, after a bench trial, the court entered the following Findings of Fact and Conclusion of Law ("*Munguia-Brown* FOFCOL") that are relevant here:

a.  "Between September 3, 2010, and December 31, 2021, Equity [Residential] has owned and operated nearly 200 residential communities in California, with approximately 100 to 150 properties in its California portfolio at a given time." *Id.* at ¶ 24.

b.  ERPOP and ERM "are, or during the time periods relevant to the case, were, entities related to [EQR], organized under the laws of various states in the United States, doing business in or having sufficient contacts with the state of California, and are subject to the jurisdiction of this Court." *Id.* at ¶ 27.

c.  "Each of the Defendants have or had roles in owning or managing properties at which class members resided, or in implementing or receiving the late fees that Plaintiffs challenge." *Id.* at ¶ 28.

d.  "The Standard Lease that Equity currently uses, and has used throughout the class period, for its California properties has generally consisted of three parts: (1) a two-page Term Sheet, which contains blank fields for the start and end dates of the tenancy, the rental rate, the Standard Late Fee, and other charges; (2) a California-specific 'Terms and Conditions' document; and (3) potential addenda that address

terms other than the monthly tenant's rental rate and the Standard Late Fee." *Id.* at ¶ 31.

21.    Plaintiffs' Lease comports with the description of Defendants' California standard form leases in the *Munguia-Brown* FOFCOL. *Id.* at ¶ 31. Upon information and belief, the leases of the members of the Class also comport with this description and contain provisions that pest control and trash fees will be paid outside of the rent, as does Plaintiffs' Lease.

## IV.    FACTUAL ALLEGATIONS

22.    California Civil Code § 1941.1(a) provides, in pertinent part:

A dwelling shall be deemed untenantable for purposes of Section 1941 if it substantially lacks any of the following affirmative standard characteristics … (6) Building, grounds, and appurtenances at the time of the commencement of the lease or rental agreement, and all areas under control of the landlord, kept in every part clean, sanitary, and free from all accumulations of debris, filth, rubbish, garbage, rodents, and vermin. (7) An adequate number of appropriate receptacles for garbage and rubbish, in clean condition and good repair at the time of the commencement of the lease or rental agreement, with the landlord providing appropriate serviceable receptacles thereafter and being responsible for the clean condition and good repair of the receptacles under his or her control ….

Given the landlord's statutory responsibilities, it is the landlord's responsibility to pay for adequate pest control and trash services for the entire apartment building complex and these costs cannot lawfully be shifted onto tenants outside of the rent.

23.    As described above, Defendants stated in the Term Sheet in Plaintiffs' Lease that tenants will be required to pay separately for pest control and trash services. On information and belief, as shown above, Defendants' leases are sufficiently materially uniform throughout California at all the California Properties for all Class members and, as such, all Class members similarly paid each month some amount to Defendants for pest control and trash services outside of the rent. Defendants' website also indicates that these fees are charged separately to tenants in

CLASS ACTION COMPLAINT

California in addition to the rent.[9]  But landlords in California cannot lawfully charge tenants separately from the rent for those services and the provisions in the leases are thus improper and unconscionable, in violation of California law, and cannot be enforced.

24.    The Term Sheet that was part of Plaintiffs' Lease stated that residents will pay for "Pest" and "Garbage Removal" and both will be "Allocated equally among all occupied apartments.  You will receive a bill from our billing vendor."  The Lease did not state the amount of the extra fees for pest control or trash.  Because Defendants divided the costs of the pest control and trash equally among all the units in the complex, these costs were not a result of any particular action or inaction by Plaintiffs or the Class but instead were routinely assessed every month and allocated equally among all the units.

25.    Tenants such as Plaintiffs and other members of the Class depend on landlords and their affiliates, such as Defendants, to be truthful about what fees can be properly charged in a lease in California and do not expect that they will be charged improper fees that are not allowed under California law, such as separate fees for pest control and trash outside of the rent.

26.    Many residential property companies and their affiliates do not charge their tenants in California separate fees for pest control or trash services knowing that, under California law,

---

[9] *See, e.g.*, https://www.equityapartments.com/UnitFees/29183/001/1102 (last visited Mar. 25, 2025) (for example, showing for Unit 8315 in the Portofino Apartment Complex (the complex where Plaintiffs lived) under "Monthly Recurring Costs," a fee for "Trash" for $35 and for "Pest" for $3, both separate from the monthly rent).  The pest and trash fees are the same at this complex whether it is a one- or two-bedroom apartment. As per Defendants' website, where fees are actually listed for their California properties (*i.e.*, all but seven properties), the pest control fees are generally $3 per month (there are two at $2, one at $4 and one at $60); and the trash fees generally range from $16 per month to $144 per month.  *See* www.equityapartments.com.  As noted *supra* at n.4, Defendants also charge at certain of their California properties (a total of 11 properties in these areas: eight in San Francisco; two in Los Angeles; and one in Orange County) a "Recurring Trash Valet Service" fee of between $25 and $35 in addition to the trash fees.

such costs must be absorbed by the landlord and included in the rent.  These extra fees cause consumers, such as Plaintiffs and the Class, to be unable to meaningfully compare expenses between apartments when deciding where to live, which also hurts fair competition.

27.    Defendants, by shifting to tenants the costs of pest control and trash, avoid covering the costs for these services, thereby increasing their profits every month from every rental unit. But this is not permitted under California law.

28.    Defendants' practice of charging improper and illegal pest control and trash fees takes unfair advantage of tenants' reasonable expectations that basic necessities are to be included in their monthly rent.   Under California law, the pest control and trash services for which Defendants charge and collect payment are essential for maintaining tenantable living conditions, which Defendants are legally responsible for providing to tenants. Shifting Defendants' responsibilities onto tenants like Plaintiffs and the Class and charging them extra for these essential services is deceptive and unfair and violates California law.  *See* Cal. Civ. Code §§ 1941.1(a)(6) and (7); *see also Green v. Superior Court of San Francisco*, 517 P.2d 1168, 1182 (Cal. 1974) (under the implied warranty of habitability, "a residential landlord covenants that premises he leases for living quarters will be maintained in a habitable state for the duration of the lease.").

29.    A sample residential lease by the California Association of Realtors ("CAR") demonstrates that **only** with respect to a single-family house does California law sometimes permit landlords to agree with tenants that the tenant will pay for pest control.  *See, e.g.*, https://sparta505.com/forms_docs/Lease%20agreement%20sample.pdf  (updated   12/23)   (last visited Mar. 25, 2025).   In Paragraph 11.G. of that document, entitled "PERIODIC PEST CONTROL," it states as follows:

G.  **PERIODIC PEST CONTROL:** ☐ Housing Provider ☐ Tenant shall pay for periodic pest control by the following service provider: _____. This obligation shall only be applicable if the Premises is a house and the periodic pest control treatment is being provided at the execution of this Agreement. The current cost of such treatment is: $_____ per _____.

CLASS ACTION COMPLAINT

As shown above, the landlord and tenant can agree that the tenant will pay for periodic pest control "only … if the Premises is a house and the periodic pest control is being provided at the execution of this Agreement."  Moreover, it specifically lays out "[t]he current cost of such treatment" so the single-family house tenant knows what he/she is agreeing to pay.  This CAR sample residential lease demonstrates that in multiple-family rental properties such as those at issue here, it is the legal and financial responsibility of the landlord to pay for pest control.

30.    A California Consumer Alert issued by the California Department of Justice, Office of the Attorney General ("Consumer Alert"), *see* https://oag.ca.gov/system/files/media/Know-Your-Rights-Habitability-English.pdf (last visited Mar. 25, 2025), makes clear that it is the responsibility of the landlord to provide pest control and trash services.  It states:



**CALIFORNIA DEPARTMENT OF JUSTICE**
OFFICE OF THE ATTORNEY GENERAL

# CONSUMER ALERT

## KNOW YOUR RIGHTS AS A CALIFORNIA TENANT
## YOUR RIGHT TO A SAFE AND WELL-MAINTAINED HOME

- **Your landlord must keep your home "habitable"—meaning, safe and fit to live in.** (See, for example, Civil Code, § 1941.1.) This is true regardless of the home's condition when you moved in. For example, your landlord must provide:
  - Working plumbing, including hot and cold water and sewage disposal.
  - Safe and working electrical equipment and wiring, including lighting.
  - Heating.
  - Walls and roofs that keep out rain and wind.
  - Unbroken windows and doors, with working locks.
  - Working smoke detectors and carbon monoxide detectors.
  - Safe fire or emergency exits.
  - Adequate pest control for rodents (like rats) and insects (like roaches and bed bugs).
  - Adequate sanitation, including enough trash cans, and clean common areas.
  - Floors, stairways, and railings in good repair.
  - Repairs to prevent and fix health hazards, such as fire hazards, visible mold, or dampness.

This Consumer Alert thus states that it is the responsibility of the landlord, including under Cal. Civil Code § 1941.1, to "provide: … [a]dequate pest control for rodents (like rats) and insects (like roaches and bed bugs) [and] [a]dequate sanitation, including enough trash cans, and clean common

areas." If the landlord can simply shift the cost of pest control and trash onto the tenants, then § 1941.1 would have no meaning.

## V. CLASS ACTION ALLEGATIONS

31.    Pursuant to the provisions of Rules 23(a), 23(b)(2), 23(b)(3) and 23(c)(4) of the Federal Rules of Civil Procedure, Plaintiffs bring this class action on behalf of themselves and a "Class" defined as:

> **All persons who, during the applicable statute of limitations period, previously leased and/or currently lease, and received or receive management services for, a rental property in California from Equity Residential, ERP Operating Limited Partnership, and/or Equity Residential Management, LLC and who paid separate fees or costs for pest control and/or trash/trash administrative services not included in the rent.**

32.    Excluded from the Class are Defendants and their officers, directors and employees; any entity in which Defendants have a controlling interest, are a parent or subsidiary, or which is controlled by Defendants; and the affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assigns of Defendants. Also excluded are the Judges and Court personnel in this case and any members of their immediate families.

33.    Plaintiffs reserve the right to modify and/or amend the Class, including, but not limited to, creating additional classes or subclasses as necessary.

34.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because all elements of Fed. R. Civ. P. 23(a), (b)(2)-(3) and (c)(4) are satisfied. Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in an individual action alleging the same claims.

35.    **Numerosity:** All requirements of Fed. R. Civ. P. 23(a)(l) are satisfied. The members of the Class are so numerous and geographically dispersed throughout California that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe

that there are thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs. Plaintiffs believe that the identity of Class members is known or knowable by Defendants or can be discerned through reasonable means. Class members may be identified through objective means. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

36.    **Commonality and Predominance:** All requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) are satisfied. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including:

a.    whether Defendants engaged in the unlawful, unfair and/or fraudulent business practices alleged herein;

b.    whether Defendants charged fees for pest control and/or trash separate from the rent;

c.    whether the fees Defendants charged for pest control and/or trash are illegal and prohibited under California law;

d.    whether Plaintiffs and members of the Class were injured and suffered damages;

e.    whether Defendants' misconduct proximately caused Plaintiffs' and the Class members' injuries; and

f.    whether Plaintiffs and members of the Class are entitled to damages and, if so, the measure of such damages.

37.    **Typicality:** All requirements of Fed. R. Civ. P. 23(a)(3) are satisfied. Plaintiffs are members of the Class, having leased an apartment and received management services for a rental property in California from Defendants and paid separate fees or costs for pest control and trash.

Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Defendants' conduct.

38. **Adequacy of Representation:** All requirements of Fed. R. Civ. P. 23(a)(4) are satisfied. Plaintiffs are adequate Class representatives because they are each a member of the Class, and their interests do not conflict with the interests of the other members of the Class they seek to represent. Plaintiffs are committed to pursuing this matter for the Class with the Class' collective best interests in mind. Plaintiffs have retained counsel competent and experienced in complex class action litigation of this type and intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the Class' interests.

39. **Predominance and Superiority:** All requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. As described above, common issues of law or fact predominate over individual issues. Resolution of those common issues in Plaintiffs' individual case will also resolve them for the Class' claims. In addition, a class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for members of the Class to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

CLASS ACTION COMPLAINT

40.    **Cohesiveness:** All requirements of Fed. R. Civ. P. 23(b)(2) are satisfied. Defendants have acted, or refused to act, on grounds generally applicable to the Class making final declaratory and injunctive relief appropriate.

41.    Plaintiffs also satisfy all requirements of Fed. R. Civ. P. 23(c)(4) in that, if appropriate, they will seek certification with "respect to particular issues."

**VI.    CAUSES OF ACTION**

<u>**COUNT I**</u>
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, *et seq.***
**(By Plaintiffs, individually and on behalf of the Class, Against All Defendants)[10]**

42.    Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 41 as though fully set forth herein.

43.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices … undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770.

44.    Defendants violated the CLRA by engaging in "unfair methods of competition and unfair or deceptive acts or practices … undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770.

45.    Plaintiffs and the proposed Class members are each a "consumer," as that term is defined in California Civil Code § 1761(d), as each is an "individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."

46.    The services for pest control and trash at issue in this Complaint are "services," as that term is defined in California Civil Code § 1761(b), because they are "work, labor, and services for other than a commercial or business use…"

---

[10] Plaintiffs' CLRA Venue Affidavits are attached hereto as Exs. "B" and "C."

47.     Defendants are each a "person" as that term is defined in California Civil Code § 1761(c), as all are "an individual, partnership, corporation, limited liability company, association, or other group, however organized."

48.     Plaintiffs' and each proposed Class member's payment to Defendants of monthly pest and trash fees for those services constituted a "transaction" as that term is defined in California Civil Code § 1761(e), as it is an "agreement between a consumer and another person, whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement."

49.     Defendants' conduct alleged herein violates the following provisions of the CLRA because Defendants engaged in unfair methods of competition and/or unfair and deceptive acts and practices in a transaction as follows:

a)   California Civil Code § 1770(a)(14), by negligently, recklessly, and/or intentionally "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law";

b)   California Civil Code § 1770(a)(19), by negligently, recklessly, and/or intentionally "[i]nserting an unconscionable provision in the contract"; and

c)   California Civil Code § 1770(a)(29)(A), by negligently, recklessly, and/or intentionally "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges…"

50.     As alleged more fully above, by charging Plaintiffs and the Class separate monthly fees for pest and trash services that under California law are required to be included as part of the rent, Defendants "[r]epresent[ed] that a transaction confers or involves … obligations that it does not have or involve, or that are prohibited by law." California Civil Code § 1770(a)(14).  In

CLASS ACTION COMPLAINT

addition, as alleged more fully above, by including in the Lease that Plaintiffs and the Class would be required to pay separate fees for pest control and trash services that under California law are required to be included as part of the rent, Defendants "[i]nsert[ed] an unconscionable provision in the contract" that was prohibited by law. California Civil Code § 1770(a)(19). Moreover, as alleged more fully above, by failing to include in the rent fees for pest control and trash services as required under California law, Defendants "[a]dvertis[ed], display[ed], or offer[ed] a price for a good or service that does not include all mandatory fees or charges…" California Civil Code § 1770(a)(29)(A).

51. Plaintiffs and the Class had a reasonable belief that Defendants would not charge them improper and illegal fees under California law outside of the rent. Defendants' actions prevented Plaintiffs and the Class from meaningfully comparing rents when deciding on where to rent an apartment. By charging such improper and illegal fees, Defendants engaged in unfair methods of competition and unfair and deceptive acts and practices under the CLRA.

52. Defendants intended that Plaintiffs and the Class would rely on the false notion that it was legal for Defendants to include fees for pest control and trash services in their leases separate from the rent, and Plaintiffs and the Class so relied.

53. As a direct and proximate result of these violations, Plaintiffs and the Class have been harmed.

54. If Plaintiffs and Class members knew that the pest control and trash fees were illegally charged by Defendants under California law, they would not have paid Defendants for such fees.

55. Defendants' conduct was material to Plaintiffs and the Class because it substantially increased the costs of their rentals through the payment of illegal monthly pest control and trash fees that should have been included in their rent. Such increased expenses would be material to a

CLASS ACTION COMPLAINT

reasonable consumer because, among other reasons, no reasonable consumer would voluntarily offer to pay expenses that are the legal responsibility of their landlords.

56.     Defendants continue to charge the illegal pest and trash fees and the harm to Plaintiffs and the Class will continue unless Defendants are enjoined under California Civil Code § 1780(a)(2) from charging illegal and improper pest and trash fees.  Plaintiffs would rent another apartment unit from Defend+

57.     ants in the future if the illegal and improper fees for pest and trash services were no longer in place.

58.     Moreover, pursuant to California Civil Code § 1782(a), Plaintiffs sent Defendants a letter on behalf of themselves and the Class on November 7, 2024, notifying Defendants of the violations under California Civil Code § 1770 and demanding that Defendants rectify the violations listed herein.  Defendants have failed to rectify or agree to rectify the problems or give notice to all affected consumers within the proscribed 30-day time period for written notice pursuant to California Civil Code § 1782.

59.     Due to Defendants failing to rectify or otherwise agreeing to rectify the problems associated with the actions detailed above, Plaintiffs seek to recover actual or statutory compensatory/monetary damages as authorized by California Civil Code § 1780(a)(1); restitution as applicable and authorized under California Civil Code § 1780(a)(3); punitive damages as authorized by California Civil Code § 1780(a)(4), which are appropriate in this case in light of Defendants' knowing, intentional, fraudulent and unconscionable conduct, as well as Defendants' reckless disregard of its legal obligations to Plaintiffs and the Class, and as otherwise recoverable under California Civil Code § 1782(a)(4); and "[a]ny other relief that the court deems proper" under California Civil Code § 1782(a)(5).  These amounts are to be determined at trial.

CLASS ACTION COMPLAINT

60.     Plaintiffs seek an award of court costs and attorneys' fees pursuant to, *inter alia*, California Civil Code § 1780(e) and California Code of Civil Procedure § 1021.5.

## COUNT II

**Violations of California's Unfair Competition Law, California Business & Professions Code §§ 17200, *et seq.***
**(By Plaintiffs, individually and on behalf of the Class, Against All Defendants)**

61.     Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 60 as though fully set forth herein.

62.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200 ("§ 17200").

63.     Defendants are each a "person" as that term is defined in California Business & Professions Code § 17201 as all fit within the definition of "natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons."

64.     Defendants' conduct violated all three prongs of § 17200 through their (1) unlawful; (2) unfair; and (3) fraudulent business acts or practices.

**Unlawful**

65.     As alleged herein, Defendants charging Plaintiffs and the Class pest and trash fees separate from the rent violated at least the following laws: (i) the CLRA, California Civil Code §§ 1750, *et seq*., as alleged in Count I, *supra* (incorporated by reference herein); and (ii) California Civil Code §§ 1941.1(a)(6) and (7).

**Unfair**

66.     As alleged herein, Defendants' conduct of charging Plaintiffs and the Class for pest control and trash fees separate from the rent was unfair because by law in California this is impermissible, and Defendants knew or should have known of same but unfairly shifted those costs to Plaintiffs and the Class.  Defendants took unfair advantage of Plaintiffs' and the Class'

reasonable belief that Defendants would not charge them improper or illegal fees outside of the rent.  Defendants' conduct was thus immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of their conduct, if any, does not outweigh the gravity of the harm to their victims.

67.    Defendants' conduct with respect to the charging of pest control and trash fees separate from the rent was also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the CLRA and California Civil Code §§ 1941.1(a)(6) and (7).

68.    Defendants' conduct with respect to the charging of pest control and trash fees outside of the rent was also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers, themselves, can reasonably avoid.

**Fraudulent**

69.    As alleged herein, Defendants' charging of illegal and improper pest control and trash fees outside of the rent to Plaintiffs and the Class was fraudulent and likely to deceive the public. Plaintiffs and the Class reasonably believed that Defendants would not charge them improper or illegal fees prohibited under California law separate from the rent.

70.    Defendants' conduct was material to Plaintiffs and the Class because it substantially increased the costs of their rentals through the payment of illegal monthly pest control and trash fees that should have been included in their rent.  Such increased expenses would be material to a reasonable consumer because, among other reasons, no reasonable consumer would voluntarily offer to pay expenses that are the legal responsibility of their landlords.

71.    If Plaintiffs and Class members knew that the pest control and trash fees were illegally charged by Defendants under California law, they would not have paid Defendants for such fees.

CLASS ACTION COMPLAINT

72.    Plaintiffs and the Class could not have reasonably avoided the injury caused by Defendants.

73.    Pursuant to California Business & Professions Code § 17203, Plaintiffs seek an order enjoining Defendants from continuing to conduct business through unfair competition in the form of charging illegal pest control and trash fees.  Defendants' conduct is ongoing and continuing, such that prospective injunctive relief is necessary.  Plaintiffs would rent another apartment unit from Defendants in the future if the illegal and improper fees for pest and trash services were no longer in place.

74.    Pursuant to California Business & Professions Code § 17203, on behalf of themselves and the Class, Plaintiffs also seek an order for the restitution of all monies collected by Defendants for the payment of illegal and improper pest control and trash fees by Plaintiffs and the Class, which were unjustly acquired through unlawful, unfair and/or fraudulent business acts or practices, to the fullest extent available under law.  These amounts are to be determined at trial.

## **COUNT III**
### **Breach of Contract/ Implied Covenant of Good Faith and Dealing**
### **(By Plaintiffs, individually and on behalf of the Class, Against All Defendants)**

75.    Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 41 as though fully set forth herein.

76.    Plaintiffs and all members of the Class have entered into materially and substantively identical form lease agreements (*i.e.*, contracts) with Defendants for the rental of residential apartment units, each of which included and includes that Plaintiffs and the Class are required to pay mandatory pest control and trash fees outside of the rent as a condition of living in the apartment.

77.    A covenant of good faith and fair dealing is implied under California law in every

such lease agreement, including Plaintiffs' and the Class' lease agreements. That covenant means that Defendants must deal with Plaintiffs and Class members in good faith, which includes not charging them improper or illegal fees for services that by California law are required to be provided by landlords as part of the rent.

78.    Plaintiffs and the Class performed all terms and conditions of the leases. However, Defendants breached the covenant of good faith and fair dealing in the leases through its policies and practices alleged herein of charging improper and illegal pest control and trash fees that should have been included in the rent.

79.    Defendants took advantage of the fact that Plaintiffs and the Class had a reasonable expectation that Defendants would not charge them any fees that were improper or illegal under California law.

80.    Defendants' conduct was material to Plaintiffs and the Class because it substantially increased the costs of their rentals through the payment of illegal monthly pest control and trash fees that should have been included in their rent. Such increased expenses would be material to a reasonable consumer because, among other reasons, no reasonable consumer would voluntarily offer to pay expenses that are the legal responsibility of their landlord.

81.    If Plaintiffs and Class members knew that the pest control and trash fees were illegally charged by Defendants under California law, they would not have paid Defendants for such fees.

82.    As a result of Defendants' actions alleged herein, Plaintiffs and the Class have sustained damages for Defendants' breach of contract/the implied covenant of good faith and fair dealing in an amount to be determined at trial.

## COUNT IV
### Unjust Enrichment
### (By Plaintiffs, individually and on behalf of the Class, Against All Defendants)
### (Plead in the Alternative)

83.     Plaintiffs, individually and on behalf of the Class, repeat and re-allege the allegations contained in paragraphs 1 through 41 as though fully set forth herein.

84.     Plaintiffs and Class members conferred a monetary benefit on Defendants. Specifically, they paid Defendants for monthly pest control and trash fees charged by Defendants separate from the rent.

85.     Defendants knew that Plaintiffs and Class members conferred a benefit on them and accepted or retained that benefit.  Defendants profited from Plaintiffs' payments of such pest control and trash fees because this relieved Defendants from their responsibility under California law to themselves cover the costs of such services, and they used Plaintiffs' and Class members' monetary payments for business purposes.

86.     If Plaintiffs and Class members knew that the pest control and trash fees were illegally charged by Defendants under California law, they would not have paid Defendants for such fees.

87.     Plaintiffs and Class members have no adequate remedy at law.

88.     As a result of Defendants' wrongful acts alleged herein, Plaintiffs and the Class members have been damaged.

89.     Under the circumstances, it would be unjust for Defendants to be permitted to retain any of the benefits that Plaintiffs and Class members conferred on them.

90.     Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiffs and Class members, proceeds that Defendants unjustly received from them and return to Plaintiffs and the Class the illegal and improper pest control and trash fees charged.

## VII.    REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court:

a)      Certify the Class and appoint Plaintiffs and their counsel to represent the Class;

b)      Find that Defendants engaged in the unlawful conduct alleged herein and enjoin Defendants from engaging in such conduct;

c)      Enter a monetary judgment in favor of Plaintiffs and the Class to compensate them for the injuries suffered, together with pre-judgment and post-judgment interest, punitive damages, and penalties where appropriate;

d)      Require Defendants to rectify all damages caused by their misconduct;

e)      Award Plaintiffs and the Class reasonable attorneys' fees and costs of suit, as allowed by law; and

f)      Award such other and further relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: March 27, 2025                    Respectfully submitted,

*/s/ Miguel Custodio, Jr.*
Miguel Custodio, Jr. (SBN 248744)
Vineet Dubey (SBN 243208)
**CUSTODIO & DUBEY LLP**
445 S. Figueroa Street, Suite 2520
Los Angeles, CA  90071
Phone:  (213) 593-9095
Fax:      (213) 785-2899
Email:  custodio@cd-lawyers.com
Email:  dubey@cd-lawyers.com

- 26 -
CLASS ACTION COMPLAINT

Janine L. Pollack, Esq. (*pro hac vice* forthcoming)
**GEORGE FELDMAN MCDONALD, PLLC**
745 5th Avenue, Suite 500
New York, NY 10151
Phone: (917) 983-2707
Fax: (888) 421-4173
Email: jpollack@4-justice.com
Email: eservice@4-justice.com

David J. George, Esq. (*pro hac vice* forthcoming)
Brittany L. Sackrin, Esq. (*pro hac vice* forthcoming)
**GEORGE FELDMAN MCDONALD, PLLC**
9897 Lake Worth Road, Suite #302
Lake Worth, FL 33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: dgeorge@4-justice.com
Email: bsackrin@4-justice.com
Email: eService@4-justice.com

C. Mario Jaramillo, Esq. (SBN # 195343)
**ACCESS LAWYERS GROUP**
1055 Colorado Blvd., Suite 500
Pasadena, CA  91106
Phone: (866) 643-9099
Fax : (866) 686-5590
Email: cmjesq@access.law

*Counsel for Plaintiffs and the Class*